UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:15-888 |
| | ) | |
| | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 641 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| v. | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | |
| | ) | |
| PHILLIP THOMPSON | ) | **INDICTMENT** |
| AARON VENNEFRON | ) | |

## COUNT 1

THE GRAND JURY CHARGES:

### BACKGROUND

1.  The National Nuclear Security Agency (NNSA) is a separately organized agency within the U.S. Department of Energy (DOE). NNSA is responsible for the management and security of the nation's nuclear weapons, nuclear nonproliferation and naval reactor programs. NNSA manages a program for the long-term disposition of weapons-grade plutonium by converting the materials to nuclear fuel for use in commercial reactors. As part of this program, NNSA oversees the design, construction and operation of the Mixed Oxide Fuel Fabrication Facility (MOX Project) at the Savannah River Site (SRS) in Aiken, SC. The MOX Project is being built exclusively with government funds.

1

2.      Shaw Areva MOX Services, LLC (later known as CB&I Areva MOX Services) (MOX Services) is a private company that was established to build the MOX Project and to perform other services to support the mission of NNSA.   MOX Services performs this work pursuant to a contract with NNSA.   MOX Services does not spend any of its own money towards the building the MOX Project.   Instead, MOX Services enters into subcontracts with various vendors to procure materials and services to fulfill its contract with NNSA.   These subcontracts bind NNSA and require it to fund the goods and services provided pursuant to the subcontracts. All money that MOX Services spends of NNSA's funds goes towards building the MOX Project.

3.      Wise Services, Inc. is a small business contractor formed in 1993 to meet construction labor needs at a Department of Energy facility in Ohio. In 2008, Wise expanded its operations to South Carolina when awarded a contract with MOX Services.   PHILLIP THOMPSON is Wise Services' Senior Representative for the MOX Project.

4.      AARON VENNEFRON is a resident of Ohio who was employed by Ross Hardware. VENNEFRON formed AV Security in 2010 for the sole purpose of submitting false invoices, for non-existent goods, to Wise Services.   These invoices were ultimately paid with government funds.   VENNEFRON operated AV Security out of his residence in Hamilton, Ohio.

## CONSPIRACY

5.      From at least in or around September of 2009 and continuing to on or about the date of this Indictment, in the District of South Carolina and elsewhere, the defendants, PHILLIP THOMPSON and AARON VENNEFRON, and others, both known and unknown to the Grand Jury, knowingly did conspire and agree together and with other persons both known and unknown

to this Grand Jury, to knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representation and promises, and to transmit or cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures and sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343;

## OBJECT OF THE CONSPIRACY

6.     The object of the conspiracy was for the defendants, PHILLIP THOMPSON and AARON VENNEFRON, using interstate wire communications, to submit or cause to be submitted materially false invoices for payment and to cause payments for those false invoices to be made.

## THE SCHEME AND ARTIFICE TO DEFRAUD

7.     It was a part of the scheme and artifice to defraud that the defendants did, and caused to be done, the following:

   a.   In 2008 and 2009, PHILLIP THOMPSON purchased materials for the MOX Project from Ross Hardware located in Ross, Ohio. The MOX Project received the materials purchased in 2008 and a portion of 2009.

   b.   Beginning in September of 2009, PHILLIP THOMPSON and AARON VENNEFRON, at that time manager of Ross Hardware, began creating false Ross Hardware invoices to submit to Wise Services. These invoices appeared to be for legitimate goods needed for the MOX Project, but no goods were provided by Ross Hardware. AARON VENNEFRON would fax the false invoices from Ross Hardware, in Ohio, to PHILLIP THOMPSON at Wise Services in South Carolina.

      PHILLIP THOMPSON, knowing the invoices to be fraudulent, then caused Wise Services to submit these invoices to MOX Services for payment.

c.   MOX Services was ultimately reimbursed by the government for the money paid for the fraudulent invoices.

d.   Beginning in 2010, AARON VENNEFRON submitted false AV Security invoices to PHILLIP THOMPSON. However, just as with Ross Hardware, no goods were provided in relation to the false invoices. PHILLIP THOMPSON knowingly submitted the false invoices for payment, and the scheme continued to operate as it had operated previously.

e.   After the money for the false invoices was received, AARON VENNEFRON and PHILLIP THOMPSON divided the proceeds between themselves.

f.   AARON VENNEFRON would also purchase various goods for PHILLIP THOMPSON at PHILLIP THOMPSON's direction.

g.   PHILLIP THOMPSON also used the proceeds of the fraudulent scheme to purchase various gifts and gratuities for people with whom he did business.

h.   During the course of the conspiracy, PHILLIP THOMPSON and AARON VENNEFRON were able to receive over $4,000,000.00 from payments based on false, fraudulent, and fictitious invoices.

All in violation of Title 18, United States Code, Section 1349.

## WIRE FRAUD

## COUNTS 2-14

THE GRAND JURY FURTHER CHARGES:

1.  Paragraphs 1 through 10, of Count 1 of this Indictment are incorporated herein by reference as setting forth a scheme and artifice to defraud;

2.  On or about the dates listed below, in the District of South Carolina and elsewhere, the Defendants for the purpose of executing the above-described scheme and artifice to defraud, did transmit and cause to be transmitted in interstate commerce, by means of a wire, certain signs, signals, and sounds, namely, facsimiles, as described below:

## COUNTS 2-14

| Count | Date of Wire | Defendant | Brief Description of Facsimile |
|---|---|---|---|
| 2 | July 19, 2011 | PHILLIP THOMPSON | Fraudulent invoice in the amount of $825.26 |
| 3 | August 22, 2011 | PHILLIP THOMPSON | Fraudulent invoices totaling $1254.89 |
| 4 | October 4, 2011 | PHILLIP THOMPSON | Fraudulent invoice in the amount of $1139.94 |
| 5 | November 14, 2011 | PHILLIP THOMPSON | Fraudulent invoice in the amount of $2653.93 |
| 6 | November 29, 2011 | PHILLIP THOMPSON | Fraudulent invoice totaling $2101.29 |
| 7 | February 9, 2012 | PHILLIP THOMPSON | Fraudulent invoices totaling $359.69 |
| 8 | July1, 2014 | AARON VENNEFRON | List of nonexistent goods to be included in a fraudulent invoice |
| 9 | November 20, 2014 | AARON VENNEFRON | Eight pages describing the division of fraudulent payments |
| 10 | November 25, 2014 | AARON VENNEFRON | List of nonexistent goods to |

|    |                   |                 | be included in a fraudulent invoice |
|----|-------------------|-----------------|-------------------------------------|
| 11 | December 3, 2014  | AARON VENNEFRON | One page describing the division of fraudulent payments |
| 12 | December 9, 2014  | AARON VENNEFRON | List of nonexistent goods to be included in a fraudulent invoice |
| 13 | December 16, 2014 | AARON VENNEFRON | List of nonexistent goods to be included in a fraudulent invoice |
| 14 | December 23, 2014 | AARON VENNEFRON | List of nonexistent goods to be included in a fraudulent invoice |

In violation of Title 18, United States Code, Section 1343.

## CONSPIRACY

## COUNT 15

THE GRAND JURY FURTHER CHARGES:

    1.    Paragraphs 1 through 10 of Count One are hereby realleged and incorporated herein:

    2.    That beginning on a date unknown to the Grand Jury, but at least sometime in September of 2009 and continuing to on or about the date of this Indictment, in the District of South Carolina and elsewhere, the defendants, PHILLIP THOMPSON and AARON VENNEFRON, knowingly and intentionally combined, conspired, confederated, and agreed with each other and other persons, both known and unknown to the Grand Jury to defraud the United States and to knowingly embezzle, steal, purloin, and convert to their own use and the use of another, and without authority convey and dispose of money or anything of value belonging to the United States and an agency thereof, having a value of more than $1,000.00, in violation of Title 18, United States Code, Section 641.

## OVERT ACTS

3.     In furtherance of the conspiracy and to effect the objects thereof, the defendants, PHILLIP THOMPSON and AARON VENNEFRON, committed the following overt acts, among others:

    a.     On or about July 19, 2011, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $825.26.

    b.     On or about August 22, 2011, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $1254.89.

    c.     On or about October 4, 2011, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $1139.94.

    d.     On or about November 14, 2011, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $2653.93.

    e.     On or about November 29, 2011, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $2101.29.

    f.     On or about February 9, 2012, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice in the amount of $359.69.

    g.     On or about July 1, 2014, PHILLIP THOMPSON and AARON

        VENNEFRON faxed, and caused to be faxed a fraudulent invoice listing nonexistent goods to be included in a fraudulent invoice.

    h.    On or about November 20, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice describing the division of fraudulent payments.

    i.    On or about November 25, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice listing nonexistent goods to be included in a fraudulent invoice.

    j.    On or about December 3, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice describing the division of fraudulent payments.

    k.    On or about December 9, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice listing nonexistent goods to be included in a fraudulent invoice.

    l.    On or about December 16, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice listing nonexistent goods to be included in a fraudulent invoice.

    m.    On or about December 23, 2014, PHILLIP THOMPSON and AARON VENNEFRON faxed, and caused to be faxed a fraudulent invoice listing nonexistent goods to be included in a fraudulent invoice.

All in violation of Title 18, United States Code, Section 371.

## THEFT OF GOVERNMENT FUNDS

## COUNT 16

THE GRAND JURY FURTHER CHARGES:

From in or about September of 2011 and continuing to on or about the date of this Indictment, in the District of South Carolina, PHILLIP THOMPSON and AARON VENNEFRON, knowingly and willfully did embezzle, steal, and convert to their own use money in excess of $1,000 belonging to the United States;

In violation of Title 18, United States Code, Section 641.

## FORFEITURE

Upon conviction to violate Title 18, United States Code, Sections 1349, 1343, 371 and 641, as charged in the Indictment, the Defendants, PHILLIP THOMPSON and AARON VEEFRON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which is involved in such violation or which constitutes or is derived from proceeds traceable to such property.

The property subject to forfeiture includes, but is not limited to, the following:

(1)   Proceeds/Money Judgment:

    (a)   A sum of money equal to all proceeds the Defendants obtained, directly or indirectly, from the offenses charged in this Indictment, that is, a minimum of approximately $4,403,948.28 in United States currency, and all interest and proceeds traceable thereto, and/or that such sum equals all property involved in or traceable to their violations of 18 U.S.C. §§ 1349, 1343, 371, and 641, for which the Defendants are jointly and severally liable;

(2)   Art Work/Collection:

    (a)   Miscellaneous coins and currency.

(3)   U.S. Cash/Currency:

    (a)   $2,101.00 in United States currency.

    (b)   $300.00 in United States currency.

    (c)   PNC Bank cashier's check No. 2043460 dated October 6, 2015 in the amount of $610,791.00.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendants-

    A.    Cannot be located upon the exercise of due diligence;
    B.    Has been transferred or sold to, or deposited with, a third person;
    C.    Has been placed beyond the jurisdiction of the court;
    D.    Has been substantially diminished in value; or
    E.    Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendants up to the value of the forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A  TRUE  BILL

Redacted

FOREPERSON

WILLIAM N. NETTLES (JCP)
UNITED STATES ATTORNEY